UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DANIEL THOMAS, | |
| Petitioner, | CIVIL NO. 11-2348 (RHK/TNL) |
| v. | REPORT & RECOMMENDATION |
| STATE OF MINNEOSTA, | |
| Respondent. | |

---

Daniel Thomas, Offender ID # 230534, MCF-Faribault, 1101 Linden Lane, Faribault, MN 55415, *pro se* Petitioner; and

David C. Brown, **HENNEPIN COUNTY ATTORNEY'S OFFICE**, 300 South Sixth Street, Suite A-2000, Minneapolis, MN 55487; Matthew Frank, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101-2134, for Respondent.

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Docket No. 1).  Petitioner Daniel Thomas is an inmate confined at the Minnesota Correctional Facility (MCF) in Fairbault, Minnesota, following his conviction and sentencing in Hennepin County District Court.  Petitioner was found guilty by a jury of first degree assault under to Minn. Stat. § 609.221.  Petitioner is serving a sentence of 98 months.

Petitioner seeks habeas relief based upon his contention that his arrest in Wisconsin and subsequent transport to Minnesota violated both states' laws. Respondent opposes this § 2254 action, asserting that (1) Petitioner has failed to set forth a cognizable claim that provides habeas corpus relief; (2) substantive review of Petitioner's claims is barred under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA); (3) Petitioner has failed to exhaust state remedies; and (4) in any event, Petitioner was not illegally arrested in Wisconsin. *See* Docket No. 6.

The action has been referred to the undersigned magistrate judge for a report and recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.2(b). For the reasons stated below, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Docket No. 1) be **DENIED** and this action be **DISMISSED WITH PREJUDICE.**

## II. BACKGROUND

### A. *Factual Background*

The facts underlying Petitioner's case are as follows:

> On July 10, 2008, officers were dispatched to a report of an assault. The victim, N.B., reported that her ex-boyfriend, [Petitioner], held her against her will, sexually assaulted her, and attacked her with a knife. N.B. had numerous lacerations to her body, including a "gaping slash to [her] forearm that was to the bone." N.B. reported that she was able to escape after convincing [Petitioner] that she would go with him to Chicago and he went to a bus station.
>
> Officers discovered that someone matching [Petitioner's] description purchased a bus ticket under the name "Shawn Smith." The bus was traveling through Wisconsin, so officers called a bus station in Eau Claire, Wisconsin with instructions

to stop the bus. A Minneapolis officer and a U.S. marshal drove to Wisconsin after instructing Wisconsin officers to remove [Petitioner] from the bus when it stopped.

Wisconsin officers were given [Petitioner's] physical description, told that he was using the name "Shawn Smith," and that he was wanted for sexual assault. An officer boarded the bus, approached [Petitioner] because he matched the physical description, and asked for identification. The officer noticed that [Petitioner] had blood on his left hand and had his fist clenched. The officer asked to see [Petitioner's] palm and observed a cut on his hand, which [Petitioner] stated occurred when he was cutting a tomato. [Petitioner] told the officer that he did not have identification and that his name was "Terrence." [Petitioner] was asked to step off the bus and he repeated that his name was "Terry Taylor." Wisconsin officers arrested [Petitioner] for giving a false name to a police officer, a misdemeanor offense in Wisconsin. When the Minneapolis officer and U.S. marshal arrived in Eau Claire, the sheriff turned [Petitioner] over to the U.S. marshal for transport back to Minnesota. [Petitioner] was charged with first-degree criminal sexual conduct, first-degree assault, and first-degree burglary.

At the time of his transport to Minnesota, [Petitioner] had a backpack in his possession. One month after [Petitioner's] transport, officers obtained two search warrants: one for a DNA sample and one for a search of [Petitioner's] backpack. [Petitioner] moved to suppress evidence obtained as a result of what he alleged was an illegal search and transport, claiming that officers failed to follow proper procedure in transporting him from one jurisdiction to another. The evidence [Petitioner] sought to suppress included: items seized as a result of the transfer, including his backpack, statements he made, and DNA evidence.

Following a hearing, the district court ruled that there was probable cause to arrest [Petitioner] for actions that took place in Minnesota. The court granted [Petitioner's] motion to suppress the statements he made to the Wisconsin officer regarding his name and the source of the blood on his hand. But the court stated that it was "satisfied that under the doctrine of inevitable discovery that those bits of evidence

> that were secured—namely . . . the backpack and the clothes [Petitioner] was wearing when he was on the bus and arrested . . . would be admissible into evidence."
>
> N.B. testified during [Petitioner's] jury trial. [Petitioner's] attorney asked N.B. why she called a victim advocate when she testified earlier that she did not want [Petitioner] to be arrested. N.B. responded that she called the advocate because she thought the advocate could help her because the advocate told N.B. that appellant "did this to someone else." Appellant's attorney continued with cross-examination.
>
> The officer who responded to the initial call testified that when she made contact with N.B., N.B. was "very upset, crying, very shaken up." The officer testified that N.B. explained to her what happened. The officer was then asked if N.B. told her anything else. The officer testified: "She said her ex-boyfriend stated that he would rather kill her than go back to prison." [Petitioner's] attorney moved for a mistrial. The district court denied the motion, stating that it was the officer's recollection of the evidence and was not so prejudicial as to warrant a new trial. The jury found [Petitioner] not guilty of criminal sexual conduct and burglary, but guilty of first-degree assault.

*State v. Thomas*, No. A10-0021, 2010 WL 5290378, at *1-3 (Minn. App. Dec. 28, 2010), *rev. denied* (Mar. 15, 2011).

### B. Procedural History

Following Petitioner's conviction and sentencing, Petitioner appealed to the Minnesota Court of Appeals. Docket No. 7, App. at 128-139. Petitioner's first argument proceeded as follows[1]:

> Evidence obtained by police as a result of [Petitioner's] warrantless arrest and unlawful return to Minnesota,[FN10] the contents of his backpack, was subject to the exclusionary rule.

---

[1] Any errors appear in the original document.

> [FN10.] [Petitioner's] arrest in Wisconsin by Wisconsin police officers for offenses committed in Minnesota, based upon the request of Minneapolis police and without charges or an arrest warrant issued by the judiciary, and his transfer to the custody of Minneapolis police officers and return to Minnesota without any judicial participation, violated numerous laws. <u>See, e.g.</u>, Uniform Criminal Extradition Act, setting forth the lawful process of transfers of persons accused of crimes between states, Minn. Stat. §§ 629.01-629.29 and Wisc. Stat. § 976.03; authorization for arrests by law enforcement officers, Minn. Stat. 629.34(c)(2), (3), and (4); Wisc. Stat. 976.14; <u>see also</u> <u>Piotrowski v. Commissioner of Public Safety</u>, 453 NW2d 689, 691 (Minn. 1990), and <u>Boland v. Commissioner of Public Safety</u>, 520 NW2d 487, 489 (Minn. App. 1994) (requiring police making an arrest in another state to do one of three things: makes a citizen's arrest [which involves taking the suspect before a magistrate in that jurisdiction], turns the suspect over to a police officer in that jurisdiction [who makes the arrest], or obtains the suspect's consent to return voluntarily to the state where the fresh pursuit began.).

The Fourth Amendment protects against unlawful arrests, searches, and seizures. US Const. Amend. IV and XIV. The Constitution also provides protections against illegal extraditions. US Const. Art. IV, § 2. The United States Supreme Court has held that evidence obtained by the state in violation of the Fourth Amendment, as well as evidence obtained by exploiting that illegality, must be suppressed. <u>Mapp v. Ohio</u>, 367 US 643 (1961); <u>Wong Sun v. United States</u>, 371 US 471 (1963).[FN11]

> [FN11.] Art. I, § 10 of the Minnesota Constitution provides a similar though often more extensive protection. <u>See e.g.</u>, <u>Matter of Welfare of EDJ</u>, 502 NE2d 779, 783 (Minn.

> 1993); Ascher v. Commissioner of Public Safety, 519 NW2d 183, 187 (Minn, 1994). The state constitution also requires that evidence obtained by exploiting an illegal search or seizure will be suppressed. State v. Mathison, 263 NW2d 61, 63 (Minn. 1978); State v. Warndahl, 436 NE2d 770, 776 (Minn. 1989).
>
> Despite the constitutional protections against illegal arrests and extraditions, the United States Supreme Court has held that an illegal arrest, even one based on the complete avoidance of established extradition procedures in acquiring the presence of the defendant, does not affect the jurisdiction of the court subject to subject the defendant to trial. Ker v. Illinois, 119 US 436 (1886); Frisbie v. Collins, 342 US 519 (1952) (state's procedures); United States v. Alvarez-Machain, 504 US 655 (1992) (country's procedures). The Court explained that the "body" of the defendant in a criminal case is never itself suppressible as a "fruit" of an unlawful arrest. Immigration and Naturalization Service v. Lopez-Mendoza, 468 US 1032, 1039 (1984); United States v. Crews, 445 US 463, 474 (1980). The Supreme Court, however, acknowledged that the "general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated." Lopez-Mendoza, 468 US 1040-41. Unless an exception is applicable, evidence obtained as fruit of [Petitioner's] unlawful arrest and return to Minnesota must be suppressed.

Docket No. 7, App. at 38-39. In addition to the first argument outlined above, Petitioner also presented the following arguments on appeal: (2) the inevitable-discovery doctrine was inapplicable; (3) the admission of the physical evidence unlawfully seized from Petitioner was prejudicial and that a new trial was required; (4) it was reversible error for the jury to hear that Petitioner had previously been in prison; (5) it was plain error for the jury to hear that Petitioner "did this to someone else"; and (6) the evidence was

insufficient to show that Petitioner inflicted great bodily harm. Docket No. 7, App. at 39-54.

As to Petitioner's first and second arguments on appeal, the Minnesota Court of Appeals held that the state district court properly relied on the inevitable discovery doctrine by admitting evidence that would have been retained by police even if Petitioner had not been illegally returned to Minnesota without extradition proceedings or Petitioner's consent following an arrest. *Thomas*, 2010 WL 5290378, at *3. The Minnesota Court of Appeals explained the evidence would have been discovered because Petitioner was identified as the assailant and the individual who purchased a bus ticket. *Id.* The Minnesota Court of Appeals rejected all of Petitioner's other arguments and affirmed his conviction. *Id.* Petitioner sought review by the Minnesota Supreme Court. The Minnesota Supreme Court denied his petition on March 15, 2011.

### III. ANALYSIS

#### A. *Standard of Review*

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas review is limited to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000). A state court decision is an "unreasonable application" of federal law if it "identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. at 1523. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411, 120 S.Ct. at 1522).

When reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000); *see also* 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

A prisoner cannot raise federal constitutional claims for the first time on petition for federal habeas corpus relief. S*ee Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir.1996) (en banc). Thus, a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state

court remedies. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731 (1999).

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan*, 526 U.S. at 845, 119 S.Ct. at 1732. The federal nature of the claim must be "fairly presented" in state court by reference to "a specific federal constitutional right, particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005).

### *B. Failure to Allege a Deprivation of a Federal Right*

Petitioner filed his petition using a habeas corpus petition form. *See* Docket No. 1. Question 9(d) of the petition form asked Petitioner to list the grounds raised upon his initial appeal. Docket No. 1, at 2. Petitioner wrote as follows: "Warrantless arrest and unlawful return to Minnesota; improper admission of physical evidence unlawfully seized; did not prove 'great bodily harm' in 1st degree—insufficient evidence (Spreigl)." Docket No. 1, at 2.

Question 12 of the Petition directs a petitioner to "[s]tate *concisely* every ground on which you claim that you are being held unlawfully." Docket No. 1, at 3-4 (emphasis in original). The petition form provides a list of frequently raised grounds for relief in

habeas corpus proceedings.[2] Petitioner checked the following two grounds from the list provided: (1) "Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure" and (2) "Conviction obtained by use of evidence obtained pursuant to an unlawful arrest." Docket No. 1, at 4. Below these check grounds for relief, Petitioner offered the following facts:

> My arrest in Wisconsin by Wisconsin police officers for offenses committed in Minnesota, based upon the request of Minneapolis Police and without charges or an arrest warrant issued by the judiciary, and [my] transfer to the custody of Minneapolis Police officers and return to Minnesota without any judicial participation violated numerous laws. Uniform Criminal Extradition Act, setting forth the lawful process of transfers of persons accused of crimes between states, Minn. Stat. 629.34, 629.01-629.29 and Wisc. Stat. 976.03, 968.07.

Docket No. 1, at 4.

Respondent first argues that Petitioner is only bringing a challenge based upon state law because the narrative in support of his Petition only cites to state law. The Court agrees.

On appeal, Petitioner challenged his arrest in Wisconsin and the admissibility of evidence obtained as a result of his arrest based upon his transportation from Wisconsin to Minnesota outside of the extradition process provided by those states' laws. In his appellate brief, Petitioner framed this challenge as a violation of both state and federal constitutional law.

---

[2] The form specifically states, "Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds."

Nevertheless, the present Petition before this Court neither cites nor describes any violation of the Constitution, laws, or treaties of the United States. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 875 (1984). Therefore, Petitioner has not presented a claim suitable for habeas corpus review. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119-120, 102 S. Ct. 1558, 1567 (1982). Therefore, this Court recommends that the Petition be dismissed with prejudice. Because this Court concludes that Petitioner has not raised a claim suitable for habeas review, this Court does not reach Respondent's remaining arguments.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11 Governing § 2254 Cases in the United States District Court requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Petitioner has not argued that there was a denial of a constitutional right. Therefore, this Court recommends that the certificate of appealability be denied.

## V. RECOMMENDATION

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that:

1. Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Docket No. 1) be **DENIED**;
2. This action be **DISMISSED WITH PREJUDICE**;

3. The certificate of appealability be **DENIED**; and

4. The Clerk of Court be directed to enter judgment accordingly.


Dated: April 16, 2012                             *s/ Tony N. Leung*
                                                  Magistrate Judge Tony N. Leung
                                                  United States District Court
                                                  Thomas v. State of Minnesota,
                                                  Civil No. 11-2348 (RHK/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **May 1, 2012**.